UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    WILLIAM E. KRAIZA                         CASE NO. 04-67530
    BARBARA A. KRAIZA

                        Debtors                Chapter 13
--------------------------------------------------------
WILLIAM E. KRAIZA and BARBARA A.
   KRAIZA

                        Plaintiffs

                    vs.                ADV. PRO. NO. 05-80241

J.K. HARRIS & COMPANY, LLC, J.K.
HARRIS FINANCIAL RECOVERY SYSTEMS,
LLC AND R.A.I. CREDIT CORPORATION

                        Defendants
--------------------------------------------------------
APPEARANCES:

BOND, SCHOENECK & KING, PLLC          CHARLES S. SULLIVAN, ESQ.
Attorneys for Defendants                     Of Counsel
One Lincoln Center, 18th Floor
Syracuse, New York 13202

CAROL ANN MALZ, ESQ.
Attorney for Plaintiffs/Debtors
554 Main Street
P.O. Box 1446
Oneonta, New York 13820

LYNN HARPER WILSON, ESQ.
Staff Attorney for Chapter 13 Trustee
250 South Clinton St., Suite 203
Syracuse, New York 13202


Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

The Court has before it a motion filed on January 18, 2006, by J.K. Harris & Co. ("JKH"), J.K. Harris Financial Recovery Systems, LLC ("FRS") and R.A.I. Credit Corporation ("RAI"), (collectively, the "Defendants"), seeking dismissal of an adversary proceeding commenced against them by William and Barbara Kraiza (the "Debtors" or "Plaintiffs") on September 22, 2005, pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") ("Defendants' Motion"). Opposition was filed by the Debtors on January 29, 2006. Also on January 29, 2006, the Debtors filed a motion seeking a default judgment against JKH and RAI based on their alleged failure to timely answer the Debtors' complaint ("Complaint"). In response, JKH and RAI filed opposition to the Debtors' motion and also filed a separate motion on January 30, 2006, requesting that if a default judgment was entered, that it be set aside pursuant to Fed.R.Bankr.P. 7055(c)

All three motions were heard by the Court on February 14, 2006, at its regular motion term in Binghamton, New York. With respect to the Debtors' motion for default judgment against JKH and RAI, the Court made a finding that those two Defendants were served with the summons, issued on November 3, 2005, and the Complaint by service upon the New York Secretary of State on November 10, 2005. Allegedly, the Office of the Secretary State transmitted copies of the Summons and Complaint to JKH and RAI on or about November 18, 2005. The Debtors were required to have a summons reissued for service on FRS on December 20, 2005, allegedly because of some problem with the original service on the Office of the Secretary of State involving FRS. FRS was served with a copy of the reissued summons and Complaint on December 27, 2005. The date set for answering the original summons and Complaint served on

JKH and RAI was December 5, 2005. An answer was filed on behalf of all Defendants on January 18, 2006. At the hearing on February 14, 2006, the Court concluded that the fact that the Debtors were required to have a summons reissued for service on FRS did not extend the time for answering the Complaint by JKH and RAI. Accordingly, the Court determined that those two Defendants were in default. The answer filed on behalf of FRS on January 18, 2006, based on the reissued summons, was timely.

At the hearing on February 14, 2006, the Court stressed the preference by courts to resolve matters based on the merits of the case, rather than based on a default in answering a complaint. *See Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001). The Court made a finding that JKH and RAI had established, to the satisfaction of the Court, that their default was not willful and that denying the Debtors' request for the entry of a default judgment would not be prejudicial to them. The Court also indicated that it would review the affidavit of Monica Linder ("Linder"), sworn to on January 30, 2006, and submitted by the Defendants, to determine whether JKH and RAI had established a meritorious defense to the Complaint.[1]

Linder identifies herself as the director of legal affairs of JKH. In her affidavit, in defense of allegations by the Debtors that JKH and FRS breached certain Engagement Agreements and engaged in wrongful and fraudulent conduct, as will be discussed below, Linder describes the services which allegedly were provided to the Debtors by JKH, as well as FRS, between May 20 2004, and October 24, 2004. According to Linder, the information concerning the Debtors' relationship with JKH and FRS, and the services allegedly provided to the Debtors, was obtained

---

[1] At the hearing, Debtors' counsel indicated that she was not contesting the sufficiency of the information in the Linder Affidavit to support the defense. Rather, she questioned the basis for Linder's knowledge of the facts set forth therein.

as a result of an internal investigation of the Debtors' case that she conducted. *See* Linder Affidavit at ¶ 22.

Upon review of the Linder Affidavit, the Court concludes that based on her internal investigation, she provided sufficient information to support a finding that the standard for setting forth a meritorious defense to the Debtors' allegations in their Complaint has been met. Accordingly, the Court will deny the Debtors' motion seeking a default judgment against JKH and RAI. This also moots the Defendants' motion to vacate any default judgment issued by the Court. Thus, the only motion remaining under consideration by the Court is the Defendants' Motion seeking dismissal of the Debtors' Complaint.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1), (b)(2)(B), (b)(2)(O) and (b)(3) as will be discussed below.

## FACTS

The Debtors filed a voluntary petition pursuant to chapter 13 of the Code on October 25, 2004. On March 18, 2005, the Court signed an Order confirming the Debtors' chapter 13 plan, which provides for monthly payments of $540.59 over a period of 60 months at a dividend of no less than 18.23% to unsecured creditors. The total amount to be paid into the plan is $32,435.40.

Debtors listed an executory contract with JKH in Schedule G, filed with the petition. On

Schedule G, the Debtors describe the contract and "nature of debtor's interest" as follows:

> Promised to clear up credit problems with I.R.S., 2nd mortgage and other creditors. Put down a downpayment of $1,095.00 on May 20, 2004. Then paid $264.00 per month plus $92.50 per month on the 15th of each month (automatic withdrawals from checking account). No problem has been resolved.

*Id.* The Debtors do not list any of the Defendants as creditors in their case. However, on December 23, 2004, RAI filed a proof of claim "RE: JK Harris" in the amount of $1,756.57 for "Services performed" and an indication that the debt was incurred May 27, 2004. According to Defendants' Motion, RAI is a "collections agency that filed a proof of claim on behalf of the other two Defendants. Defendant RAI is not a party to the contracts between Plaintiffs and Defendants J.K. Harris and FRS, and performed no services for Plaintiffs." *See* Defendants' Motion at ¶ 4.

The Debtors entered into contracts identified as "Engagement Agreements" with JKH and FRS on May 20, 2004. *See* Exhibit B attached to the Complaint. The Agreement with JKH states in its caption that "THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION, JK HARRIS & COMPANY, LLC ENGAGEMENT AGREEMENT." Also contained in that Agreement is the following provision entitled "BINDING ARBITRATION:"

> You agree that any claim, dispute or controversy between JKH and you or claim by either JKH or you against the other or the employees, agents or assigns of the other and any claim arising from or relating to this Agreement or the relationships which result from this agreement, no matter against whom made, including the applicability of this arbitration clause and the validity of the entire agreement shall be resolved by neutral binding arbitration by the National Arbitration Forum, under the Code of Procedure in effect as the time the claim is filed. Any arbitration hearing at which you appear will take place at a location near your residence.
>
>                                                       * * *
>
> NOTICE: BY SIGNING THIS ARBITRATION AGREEMENT, THE PARTIES ARE AGREEING TO HAVE ANY DISPUTE ARISING FROM THE

AGREEMENT AS DESCRIBED ABOVE, RESOLVED EXCLUSIVELY BY ARBITRATION, AND ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVING ANY RIGHT TO LITIGATE ANY SUCH DISPUTES IN COURT, AND THE PARTIES ARE ALSO WAIVING ANY RIGHT TO A TRIAL BY JURY.

*Id*. A similar provision is contained in the Engagement Agreement entered into with FRS.

Also contained in the Engagement Agreements is a provision entitled, LIMITATION OF LIABILITY, which provides that Debtors agreed that "JKH/FRS shall not be liable to you or any third party for special, direct, incidental, punitive, or consequential damages. The liability of JKH/FRS with respect to any claim or action arising out of or related to the Agreement, whether in contract, tort, warranty or otherwise, shall not exceed the amount paid to JKH/FRS by you under this Agreement."

According to the Defendants' Motion, FRS is "an advocacy service which assists its clients in resolving their tax delinquencies. Defendants' Motion at ¶ 1. JKH allegedly provides "consumer advocacy services." *Id.* at ¶ 2. The Debtors allege in their Complaint that despite having paid JKH and FRS under the terms of the Engagement Agreements, they did not receive any assistance from them. *See* Complaint at ¶ 7. In addition, the Debtors assert that the "[b]oilerplate terms and conditions of the contract to limit the Defendants' liability were not pointed out to the Debtors before they signed, not explained to nor agreed to by the Debtors and are unconscionable and against public policy." *Id.* at ¶ 8.

In their Complaint, the Debtors request an Order disallowing the claim of the Defendants and awarding them a refund of $5,000, paid for the services, as well as damages of $10,000 for breach of contract and "trebling those damages to an estimated thirty thousand dollars ($30,000) for the Defendants' fraud . . . ." *See* Wherefore Clause of the Complaint.

## ARGUMENTS

As a basis for dismissing the Debtors' Complaint, the Defendants contend that it is non-core and that the Engagement Agreements provide that any disputes arising from the agreements are to be referred to arbitration. It is the Debtors' position that the Court has core jurisdiction over the adversary proceeding because the Debtors are objecting to the proof of claim filed by RAI on behalf of JKH and FRS.

With respect to the provisions in the Engagement Agreements requiring referral to arbitration, it is the Debtors' position that the alleged fraud voided those provisions, as well as the provisions limiting the damages, found in both contracts. In addition, the Debtors assert that if the Complaint fails to meet the particularity standards set forth in Fed.R.Bankr.P. 7009, which incorporates Rule 9 of the Federal Rules of Civil Procedure, as Defendants allege, the Debtors are entitled to amend their Complaint.

## DISCUSSION

As an initial matter, the Court must determine whether it has jurisdiction to address the relief sought in the Debtors' Complaint. The Court's subject matter jurisdiction is defined in 28 U.S.C. §§ 157 and 1334. *See Plaza at Latham Associates v. Citicorp North America, Inc.*, 150 B.R. 507, 510 (N.D.N.Y. 1993). This Court has subject matter jurisdiction with respect to (1)

Case 05-80241-6-sdg    Doc 31    Filed 05/15/06    Entered 05/15/06 11:37:08    Desc Main
                        Document      Page 8 of 12

8

cases "under title 11,' (2) civil proceedings "arising under title 11," (3) civil proceedings "arising in" a case under title 11 and (4) civil proceedings "related to" a case under title 11. *See* 28 U.S.C. § 157(a). "Bankruptcy judges *may hear and determine* all cases under title 11 and all core proceedings arising under title 11 . . . and may enter appropriate orders and judgments. . . ." 28 U.S.C. § 157(b)(1) (emphasis added).

> A bankruptcy judge may also *hear* non-core proceedings that are otherwise related to a title 11 case. In such a proceeding, however, the bankruptcy judge may not *determine* the issue, but may only submit proposed findings of fact and conclusions of law to the district court.

*In re Best Products Co., Inc.*, 68 F.3d 26, 30 (2d Cir. 1995), citing 28 U.S.C. § 157(c)(1).

Section 157(b)(3) authorizes the bankruptcy judge to make a determination whether a proceeding is a "core" proceeding or otherwise "related to" the bankruptcy case. In this regard, a review of the legislative history of 28 U.S.C. § 157 supports the conclusion that Congress intended "a broad interpretation of the parameters of a core proceeding." *See id.* at 31, citing *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1398 (2d Cir.), *vacated sub nom. Insurance Co. of State of Pennsylvania v. Ben Cooper, Inc.,* 498 U.S. 964 (1990), *reinstated*, 924 F.2d 36 (2d Cir. 1991). The fact that the resolution of the matter may be impacted by state law does not prevent the bankruptcy court from finding that it is a core matter. *See* 28 U.S.C. § 157(b)(3). Indeed, the Second Circuit has made it clear that "bankruptcy courts are not precluded from adjudicating state law claims when such claims are at the heart of the administration of the bankruptcy estate." *Ben Cooper*, 896 F.2d at 1399.

Whether or not a proceeding is a "core" proceeding depends on the nature of the proceeding if it is not one of those specifically listed in 28 U.S.C. 157(b)(2) and whether the

9

essence of the proceeding is "'at the core of the federal bankruptcy power.'" *See In re Kings Falls Power Corp.*, 185 B.R. 431, 438 (Bankr. N.D.N.Y. 1995), citing *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 707 (2d Cir. 1995), quoting *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982). In this case, the Debtors, in commencing the adversary proceeding, have objected to the proof of claim filed by RAI on behalf of JKH and FRS and have requested damages based on Defendants' alleged breach of contract and fraud and misrepresentation. As noted by the Court of Appeals for the Second Circuit "when a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it was a prepetition contract claim arising under state law." *S.G. Phillips*, 45 F.3d at 705, citing *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1389-90 (2d Cir. 1990); *see also In re Bizfon, Inc.*, Case No. 01-12547, 01-1216, 2002 WL 181975, at *2 (Bankr. D.N.H. Jan. 29, 2002) (noting that a claim "based on State law, 'procedurally characterized' as a counterclaim to a creditor's proof of claim, may be finally determined by this Court in the process of determining whether the creditor's claim should be allowed."); *Cibro Petroleum Prod., Inc. v. City of Albany (In re Winimo Realty Corp.)*, 270 B.R. 108, 120 (S.D.N.Y. 2001) (indicating that "where a defendant to a pre-petition contract action has filed a proof of claim against the estate, the defendant has 'sought the benefits of the bankruptcy court's jurisdiction' and the matter will be deemed core").

Under this analysis, the allegations in the Debtors' Complaint confer core jurisdiction on this Court to the extent that they seek disallowance of the claim filed by RAI on behalf of "JK Harris" based on Debtors' allegations that the contracts were breached prepetition by Defendants. However, there is still the issue concerning the provisions in both Engagement Agreements requiring that any disputes involving the contracts are subject to binding arbitration.

10

In their third cause of action, the Debtors allege "that they were induced to enter a contract with the Defendants by false representations and fraudulent statements." Complaint at ¶ 17. The issues raised in the Debtors' Complaint go to the performance of services under the terms of the Engagement Agreements. The United States Supreme Court has held that a claim of fraud in the inducement of the entire contract, which includes an agreement to arbitrate, is a matter to be resolved in arbitration and not in a federal court. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). The Debtors have not alleged that there was any fraudulent representations made regarding the arbitration provision itself that induced them to assent to the Engagement Agreements. *See Prima Paint*, 388 U.S. at 403-04. In fact, the Court notes that the provisions in the Agreements, particularly that with JKH, clearly indicate that any disputes are to be resolved through arbitration. Indeed, the caption of the portion of the Engagement Agreement signed by the Debtors on May 20, 2004, with JKH states in bold letters in the caption that it is subject to binding arbitration. "BINDING ARBITRATION" is also set out as a separate term in both Engagement Agreements, including the "Notice" that by signing the agreements, the parties agreed to have any disputes resolved by arbitration. It is evident to the Court that these provisions were clear and unambiguous and that there was no fraudulent misrepresentation made concerning the forum for any dispute resolution.

Nor does the Court find the arbitration clause unconscionable, particularly in light of the fact that any arbitration is to occur at a place near the Debtors' residence, rather than out-of-state. In addition, the fact that the arbitration clause includes a provision waiving Debtors' right to a trial by jury has also been held not to be unconscionable. *See Sleeper Farms v. Agway, Inc.*, 211 F.Supp.2d 197, 203 (D. Me. 2002) (citations omitted).

As the Court of Appeals for the Second Circuit recently stated, "[b]ankruptcy courts generally do not have discretion to refuse to compel arbitration of 'non-core' bankruptcy matters, or matters that are simply 'related to' bankruptcy cases." *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006). More important to the matter herein is the court's statement in *Hill* that "even as to core proceedings, the bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that 'inherently conflict' with the Arbitration Act or that arbitration of the claim would 'necessarily jeopardize' the objectives of the Bankruptcy Code." *Id.*, citing *In re U.S. Lines, Inc.*, 197 F.3d 631, 640 (2d Cir. 1999); *see also Hill*, 436 F.3d at 109-110 (citations omitted) (noting that various district courts have "granted motions to arbitrate core claims on the grounds that arbitration would not interfere with or affect the distribution of the estate").

This Court is bound by the holding of the United States Court of Appeals for the Second Circuit in *Hill*. With respect to the matter presently before this Court, the Court does not believe that having the Debtors' causes of action based on alleged breach of contract and fraudulent misrepresentation determined by an arbitrator will interfere with or affect the distribution of the estate. Accordingly, if the Debtors wish to pursue their claims against the Defendants, they will have to do so through binding arbitration. As noted above, the Debtors' plan has been confirmed. If successful with their allegations, the Debtors may recover sufficient monies to fund the plan. However, if they are not successful, it simply means that they will have to provide for payment of the Defendants' claim through their Plan.

Based on the foregoing, it is hereby

ORDERED that the Debtors' motion seeking a default judgment against JKH and RAI

12

is denied; it is further

ORDERED that the Defendants' motion, seeking to have any default judgment vacated pursuant to Fed.R.Bankr.P. 7055(c), is determined to be moot; it is further

ORDERED that the Defendants' motion to dismiss the Complaint is granted; it is further

ORDERED that the Debtors are authorized to proceed to arbitration on the issues of breach of contract and fraud; it is further

ORDERED that to the extent that the Debtors' Complaint seeks disallowance of the Defendants' claim, the Debtors shall have thirty (30) days from a final determination in any arbitration to file a motion pursuant to Code § 502; and it is finally

ORDERED that the Chapter 13 trustee escrow payments from the Debtors on the Defendants' claim pending further Order of this Court.

Dated at Utica, New York

this 15th day of May 2006

/s/   Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge